UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RAYMOND J. BERGERON DAVILA,

Plaintiff,

v. Case No. 25-cv-413

SARAH A. BOYEA, *et al*.,

Defendants.

---

**DECISION AND ORDER**

---

Plaintiff Raymond J. Bergeron Davila, who is representing himself, is proceeding on Eighth Amendment claims in connection with allegations that Defendants Sarah Boyea, Jay Van Lanen, Christopher Stevens, Michael Schultz, Jay Howarth, Karmin Vandenbush, and Kendra Race denied medical care and used excessive force at the Green Bay Correctional Institution in November 2024. ECF Nos. 1 & 17. Plaintiff filed four inmate complaints attempting to raise the different issues against these seven defendants. *See* ECF No. 46-1 at 6. On June 24, 2026, Defendants filed a motion for *partial* summary judgment on exhaustion grounds in connection with the claims raised in GBCI-2024-16965 and GBCI-2024-17678. ECF No. 44. Because GBCI-2024-16965 was improperly rejected by the CCE, administrative remedies were "unavailable" to Plaintiff, and the Court will deny Defendants' motion for partial summary judgment in connection with the claims raised in that inmate complaint. Additionally, because Plaintiff has filed a "motion to withdraw exhaustion defense" in connection with GBCI-2024-17678, *see* ECF No. 80, the Court will grant Defendants' motion for partial summary judgment in connection with the claims raised in that inmate complaint.

# I. BACKGROUND

## a. Parties

At the relevant time, Plaintiff was a prisoner at the Green Bay Correctional Institution, where Defendants were employed. ECF No. 45, ¶¶1 & 2. Specifically, Christopher Stevens was warden; Jay Van Lanen and Michael Schultz were captains; Jay Howarth was a lieutenant, Kendra Race was a corporal; Karmin Vandenbush was a nurse; and Sarah Boyea was a psychologist. ECF No. 1.

## b. Complaint Allegations

According to the complaint, on November 15, 2024, Plaintiff was on suicide watch at the Green Bay Correctional Institution. ECF No. 1, ¶8. At about 10:00 p.m., he broke a steel metal plate off the wall, pulled the cable cord from the open wall, removed the plastic casing, and sharpened about one foot of wire from the cable cord. *Id.*, ¶9. Plaintiff then stuck the wire cable cord into his arm "at various angles, at various depths, into skin, tissue, muscle, tendons, ligaments and v[ei]ns, to the point that [his] arm could no longer bend." *Id.* Cpl. Race and Cpt. Van Lanen saw that he needed medical treatment and escorted him to the medical office. *Id.*, ¶10. During the escort, Cpl. Race and Cpt. Van Lanen allegedly used excessive force by handcuffing him in a manner that required him to bend and extend his arm in a very painful way. *Id.*, ¶¶4 &10. Once in the medical office, Nurse Vandenbush looked at Plaintiff's arm and allegedly told him to remove the wire cable cord himself because it was out of her scope of practice as a nurse to remove it. *Id.*, ¶11. Plaintiff did not want to remove the wire himself, so he "was left with the thick metal cable cord inside of his arm for [] 11 hours in extreme pain and suffering[.]" *Id.*, ¶12. At around 10:15 p.m., Cpt. Van Lanen escorted Plaintiff to a different cell, where he was placed in bed restraints (while the wire cable cord was still in his arm). *Id.*, ¶15. According to Plaintiff, Warden Stevens, Cpt. Van Lanen, Cpt. Schultz, and Ms. Boyea allegedly authorized his placement in bed restraints

rather than sending him off-site to a medical care provider who had the training to remove the wire. *Id.* Plaintiff experienced extreme pain. *Id.*, ¶16.

The following day, on November 16, 2024, Lt. Howarth told Plaintiff that the "higher ups," including Warden Stevens, directed him to either cut the wire out of Plaintiff's arm or extend Plaintiff's time in bed restraints. *Id.* Plaintiff did not want to remain in bed restraints due to extreme pain, so he had no choice but to "unwillingly let his arm lay still so Lt. Howarth can use medical scissors, tweezers and saline on his arm to get the metal out[.]" *Id.*, ¶18. Afterwards, Plaintiff received glue for the puncture holes and extraction sites and a large dressing for the injury. *Id.*, ¶19.

**c. Claims Proceeding**

**i. <u>Eighth Amendment: denial of medical care</u>**

On December 29, 2025, Judge Pamela Pepper screened the complaint and allowed Plaintiff to proceed on the following Eighth Amendment denial of medical care claims: (1) against Nurse Vandenbush for the failure to treat his arm injury and leaving the wire in his arm; (2) against Warden Stevens, Cpt. Van Lanen, Cpt. Schultz, and Ms. Boyea for ordering his placement in bed restraints rather than sending him off-site to a medical care provider who had the training to remove the wire; (3) against Warden Stevens, Cpt. Schultz, and Ms. Boyea for directing Lt. Howarth to remove the wire rather than sending him off-site to a medical care provider who had the training to remove the wire; and (4) against Lt. Howarth for the manner in which he removed the wire from Plaintiff's arm. ECF No. 17 at 6 & 7.

**ii. <u>Eighth Amendment: excessive force</u>**

On December 29, 2025, Judge Pepper also allowed Plaintiff to proceed on an Eighth Amendment excessive force claim against Cpt. Van Lanen and Cpl. Race in connection with the manner in which they handcuffed Plaintiff behind his back on November 15, 2024, forcing his arm to straighten and bend in a very painful way. ECF No. 17 at 7.

**d. Inmate Complaints**

Plaintiff filed four inmate complaints in an attempt to raise the different issues giving rise to this lawsuit: GBCI-2024-16965, GBCI-2024-17177, GBCI-2024-17528, and GBCI-2024-17678. *See* ECF No. 46-1.

i. **GBCI-2024-16965**: the decision to authorize Lt. Howarth to remove the wire from Plaintiff's arm instead of sending him off-site to a medical care provider by Warden Stevens, Cpt. Schultz, Ms. Boyea, and Lt. Howarth

On November 19, 2024, Plaintiff filed GBCI-2024-16965 alleging,

> "I complain that HSU Carmen & Does 1-4, and Warden Stevens & Perttu, Security director Schultz, and Does 4-24 all decided Lt. Howarth pull/cut metal out of me hurting me very badly."

*See* ECF No. 46-2 at 12. The Institution Complaint Examiner (ICE) recommended dismissing the inmate complaint on December 16, 2024 because body-camera footage showed "verbal consent." *Id*. at 2 & 3. The Reviewing Authority (RA) accepted the recommendation and dismissed the inmate complaint later that same day, on December 16, 2024. *Id*. at 4.

On January 6, 2025, Plaintiff appealed the dismissal and explained that the appeal was late because: (1) he was on observation status with no materials in his cell; (2) he was not timely and routinely getting mail in observation status; and (3) the ICE did not include the inmate complaint number on the decision he received and Plaintiff did not know how to appeal without an inmate complaint number. *Id*. at 22 & 24. The Corrections Complaint Examiner (CCE) recommended "rejecting" the appeal as untimely filed after fourteen calendar days, even with the four day grace period under the prisoner mailbox rule. *Id*. at 6. The CCE explained that the ICE's decision was entered on December 17, 2024; and the CCE received the appeal on January 10, 2025. *Id*. The CCE concluded that Plaintiff was an experienced litigator who had been successfully using the ICRS "for the past 10 years" and he knew how to track the submissions and complaint numbers for an appeal, so there was no good cause for the tardy filing. *Id*. The Office of the Secretary

(OOS) accepted the CCE's recommendation and "rejected" the appeal on January 31, 2025. *Id*. at 7.

> **ii. <u>GBCI-2024-17177</u>**: the decision to order Plaintiff's placement in bed restraints instead of sending him off-site for medical care by Nurse Vandenbush, Cpt. Van Lanen, Ms. Boyea, Warden Stevens, and Cpt. Schultz

On November 24, 2024, Plaintiff filed GBCI-2024-17177 alleging,

> "I complain that HSU Does 1-10 and R.N. Carmen denied me medical treatment in regards to my slices I did on my arm & metals in arm on 11-15-24…HSU Carmen said on camera…that she aint treating me & that it was me who had done it so that I can be the one who treats it. I dont have no medical license to even practice medicine."

*See* ECF No. 46-3 at 10. The ICE recommended dismissing the inmate complaint on December 23, 2024 because HSU would not remove the wire without "assistance" from Plaintiff; and Plaintiff refused to agree to help remove the wire. *Id*. at 2. The ICE noted that, after conversations with Warden Stevens and the "Administration Captain," it was determined that Lt. Howarth could remove the wire. *Id*. Because Plaintiff allegedly gave "permission" to allow Lt. Howarth to remove the wire, the ICE recommended dismissing the inmate complaint. *Id*. The RA accepted the recommendation and dismissed the inmate complaint on January 6, 2025. *Id*. at 3. Plaintiff properly appealed the dismissal all the way to the OOS; and the parties agree that this inmate complaint exhausted the denial of medical care claim against Nurse Vandenbush, Cpt. Van Lanen, Ms. Boyea, Warden Stevens, and Cpt. Schultz. ECF No. 45, ¶¶10-15; *see also* ECF No. 47 at 1, 12, & 13.

> **iii. <u>GBCI-2024-17528</u>**: the allegedly missing inmate complaint regarding denial of medical care by Nurse Vandenbush, Cpt. Van Lanen, Ms. Boyea, Warden Stevens, and Cpt. Schultz

On December 3, 2024, Plaintiff filed GBCI-2024-17528 alleging that one of his inmate complaints was missing. *See* ECF No. 46-4 at 6. He stated,

> "I submitted an Inmate Complaint because RN Carmen and Staff Does 1-24 etc. had refused me medical treatment to myself harm injurys from my metals in my arm from in between timeframes 11-15-24 continuing into 11-16-24 and I never received anything back by the I.C.E. office acknowledging that complaint submission."

*Id*. The ICE recommended dismissing the inmate complaint on December 9, 2024 because Plaintiff's missing inmate complaint was processed as GBCI-2024-17177 (which at the time had been received but had not been resolved yet). *Id*. at 2. The RA accepted the recommendation and dismissed the inmate complaint on December 11, 2024. *Id*. at 3. Plaintiff did not appeal the RA's decision to the CCE. *Id*. at 4.

**iv. <u>GBCI-2024-17678</u>**: the allegedly missing inmate complaint regarding the use of excessive force by Cpt. Van Lanen and Cpl. Race

On December 8, 2024, Plaintiff filed GBCI-2024-17678 alleging that another one of his inmate complaints was missing. *See* ECF No. 46-5 at 6. He stated,

> "I complain that my previous complaint submission going missing and not responded to in anyway. Inside that complaint was content of staff assaulting me, Kendra Race, Cpt. Van Lanen…that complaint went missing. Went out same night Complaint No. GBCI-2024-17177 was sent out…where is the missing complaint and will yous find it for me."

*Id*. The ICE "rejected" the inmate complaint on December 9, 2024 because the only inmate complaints received related to the incidents in question were GBCI-2024-16965 and GBCI-2024-17177. *Id*. at 2. Plaintiff did not appeal the rejection. *Id*. at 4.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of

the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## III. ANALYSIS

### a. Exhaustion Standard

Under the Prison Litigation Reform Act, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "To satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *See Chambers v. Sood,* 956 F.3d 979, 983 (7th Cir. 2020) (citing *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019)). "The primary justification for requiring prisoners to exhaust administrative remedies is to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006) and *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020)).

Wisconsin has an established system—the Inmate Complaint Review System—that allows prisoners to file complaints about policies, rules, living conditions, and staff actions at their institutions. *See* Wis. Admin. Code §DOC 310.04. Under the ICRS, an inmate must file an inmate complaint within fourteen calendar days after the occurrence giving rise to the complaint. §DOC 310.07(2). The ICE may accept, return, or reject the complaint. §DOC 310.10(2). An inmate

complaint that is "rejected" on procedural grounds—such as untimeliness—may be appealed to the Reviewing Authority (RA) within ten calendar days. §DOC 310.10(10). The RA's decision is "final" on a rejected inmate complaint. *Id.*

An inmate complaint that is dismissed on the merits must be appealed to the CCE within fourteen calendar days after the date of the RA's decision. §DOC 310.09(1). The CCE may recommend "rejection" of an appeal that is not timely filed. §DOC 310.12(5); §DOC 310.09(1). An inmate complaint or appeal that is properly "rejected" based on a procedural defect does not fulfill the exhaustion requirement. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). But "[u]pon good cause as determined by the CCE, an appeal filed later than 14 days after the date of the reviewing authority decision may be accepted." §DOC 310.12(6). Good cause is "occasioned by something that is not within the control of the movant." *Pyles v. Nwaobasi*, 829 F.3d 860, 866 (7th Cir. 2016). "For all accepted appeals, the CCE shall recommend that the reviewing authority decision be affirmed or dismissed, in whole or in part, and send its recommendation to the secretary within 45 days of receipt of the appeal." §DOC 310.12(9). The OOS shall make a decision within 45 days following receipt of the CCE's recommendation; and the OOS's decision is "final" on an inmate complaint addressed on the merits. §DOC 310.13(1)-(4).

Inmates need not exhaust administrative remedies that are "unavailable," however. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Administrative remedies are "unavailable" where "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates;' (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process." *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

**b. GBCI-2024-17177**

Defendants concede that GBCI-2024-17177 exhausted Plaintiff's denial of medical care claims against Nurse Vandenbush, Cpt. Van Lanen, Ms. Boyea, Warden Stevens, and Cpt. Schultz.

*See* ECF No. 47 at 1, 12, & 13. ("The case should proceed only on Eighth Amendment claims against Vandenbush, Van Lanen, Boyea, Stevens, and Schultz for deliberate indifference to a serious medical need."). Therefore, the claims raised in GBCI-2024-17177 in connection with the decision to order Plaintiff's placement in bed restraints instead of sending him off-site for medical care by Nurse Vandenbush, Cpt. Van Lanen, Ms. Boyea, Warden Stevens, and Cpt. Schultz will proceed.

**c. GBCI-2024-17678**

On November 12, 2026, Plaintiff filed a "motion to withdraw exhaustion defense" in connection with the excessive force claim raised against Cpt. Van Lanen and Cpl. Race in GBCI-2024-17678. ECF No. 80 at 3. Given that Plaintiff no longer wishes to pursue that claim through this lawsuit, the Court will grant Defendants' motion for partial summary judgment in connection with that claim. Because there are no other claims against Cpl. Race in this case, she will be dismissed from this case.

**d. GBCI-2024-16965**

That leaves the denial of medical care claim raised in GBCI-2024-16965 in connection with the decision to authorize Lt. Howarth to remove the wire from Plaintiff's arm instead of sending him off-site for medical care by Warden Stevens, Cpt. Schultz, Ms. Boyea, and Lt. Howarth. Plaintiff properly raised that issue in GBCI-2024-16965; and he claims that his appeal of that inmate complaint was improperly rejected as untimely filed beyond fourteen calendar days. Plaintiff argues that he had "good cause" for the untimely filing and that he raised three reasons why he had good cause in his inmate complaint appeal. First, Plaintiff was allegedly in observation status without any legal materials (because he could not be trusted with property and was in and out of bed restraints while on observation status). ECF No. 59. Second, the mail in observation status allegedly was not delivered routinely or timely. *Id.* And third, the ICE allegedly did not

include the inmate complaint number on the decision Plaintiff received and Plaintiff did not know how to appeal an inmate complaint without an inmate complaint number. *Id.*

The Court has reviewed Plaintiff's inmate complaint appeal in GBCI-2024-16965, *see* ECF No. 46-2 at 22 & 24, and agrees that Plaintiff did raise all three reasons for his untimely filing in the inmate complaint appeal. However, the CCE did not address all three reasons. It only addressed the third reason—the lack of an inmate complaint number—and concluded that Plaintiff was an experienced litigator who knew how to track the submissions and complaint numbers for an appeal. But the CCE's failure to briefly investigate the first two reasons—the alleged limited access to legal materials and the allegedly inconsistent mail in observation status—is a problem given the short time period involved. Indeed, the ICE's decision was entered on December 17, 2024; and fourteen calendar days from then would have been an appeal deadline of December 31, 2024. Plaintiff drafted his inmate complaint appeal less than a week later, on January 6, 2025; and the CCE received the appeal on January 10, 2025. Given that only a few days passed between the appeal deadline of December 31, 2024 and January 6, 2025, a lack of access to legal materials and/or inconsistent mail in observation status could have made a difference that was reasonably beyond Plaintiff's control and satisfied good cause. Thus, at a minimum, the CCE should have determined how many days Plaintiff was in observation status in December 2024 and January 2025; and should have inquired with staff about the availability of legal materials and mail in observation status. The failure to do so means that the CCE improperly rejected the inmate complaint appeal without fully considering Plaintiff's good cause plea. Therefore, the Court finds that administrative remedies were unavailable to Plaintiff in connection with GBCI-2024-16965. Accordingly, the Court will deny the motion for partial summary judgment in connection with the claims raised in GBCI-2024-16965. The claims raised in GBCI-2024-16965 in connection with the decision to authorize Lt. Howarth to remove the wire from Plaintiff's arm instead of sending

him off-site for medical care by Warden Stevens, Cpt. Schultz, Ms. Boyea, and Lt. Howarth will proceed as well.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for partial summary judgment for failure to exhaust administrative remedies (ECF No. 44) is **GRANTED in part** and **DENIED in part.** The motion is granted with respect to the excessive force claim raised against Cpt. Van Lanen and Cpl. Race in GBCI-2024-17678. The motion is denied with respect to the medical care claims raised in GBCI-2024-16965.

**IT IS FURTHER ORDERED** that Plaintiff's motion to withdraw exhaustion defense (ECF No. 80) is **GRANTED**; and the excessive force claim raised against Cpt. Van Lanen and Cpl. Race is **DISMISSED without prejudice** based on failure to exhaust administrative remedies.

**IT IS FURTHER ORDERED** that Cpl. Race is **DISMISSED** from this case.

Dated in Milwaukee, Wisconsin this 24th day of November, 2026.

Stephen C. Dries

STEPHEN C. DRIES
United States Magistrate Judge